J-A12042-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.A., A MINOR AND M.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.L.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1118 WDA 2021 |

Appeal from the Order Entered August 20, 2021
In the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-AP-0000148-2020,
CP-02-AP-0000149-2020, CP-02-DP-0001177-2009,
CP-02-DP-0001178-2009

| | | |
|---|---|---|
| IN RE: M.A., A MINOR AND M.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.L.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1119 WDA 2021 |

Appeal from the Order Entered August 20, 2021
In the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-AP-0000148-2020,
CP-02-AP-0000149-2020, CP-02-DP-0001177-2009,
CP-02-DP-0001178-2009

| | | |
|---|---|---|
| IN RE: M.A., A MINOR AND M.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.L.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1120 WDA 2021 |

Appeal from the Order Entered August 20, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000148-2020,
CP-02-AP-0000149-2020, CP-02-DP-0001177-2009,
CP-02-DP-0001178-2009

| | | |
|---|---|---|
| IN RE: M.A., A MINOR AND M.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.L.V., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1121 WDA 2021 |

Appeal from the Order Entered August 20, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000148-2020,
CP-02-AP-0000149-2020, CP-02-DP-0001177-2009,
CP-02-DP-0001178-2009

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: AUGUST 03, 2022**

T.L.V. (Mother) appeals from the orders that principally had the effect of involuntarily terminating her parental rights to two of her biological children, M.W.A. and M.L.A (collectively, Children). On appeal, Mother contends that the lower court erred when it terminated her rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (8). Moreover, Mother asserts that the court mistakenly found that Allegheny County's Office of Children, Youth and Families (CYF) met its burden in demonstrating that termination of her rights best suited the needs of the Children. *See* 23 Pa.C.S.A. § 2511(b). After a

_____

* Retired Senior Judge assigned to the Superior Court.

thorough review of the record, we find no abuse of discretion or error of law in the court's determination and affirm.

As summarized by the orphans' court:

Mother, Father [who is now deceased due to a suspected drug overdose], and Children have had involvement with [CYF] dating back to November of 2008, when M.W.A. was about three years old and M.L.A. was just a year old. Over the course of the Children's lives, Mother has struggled to overcome issues including chronic substance abuse and repeated experiences of intimate partner violence.

When CYF received the 2008 referral regarding the family, concerns included parental drug and alcohol abuse. CYF's concerns increased to the point that the Children were adjudicated dependent and removed from their parents in October 2009. Both parents were incarcerated at the time. Mother's criminal records reflect both convictions on drug-related charges and violations of probation involving further drug and alcohol use. The Children returned home after about nine months in placement. However, the dependency cases remained open with the [c]ourt and permanency reviews were held regularly.

In 2011[,] CYF's concerns regarding the family intensified, focused on parental substance abuse and intimate partner violence. The Children were removed for the second time in June 2011 when M.W.A was about five and a half years old and M.L.A. was about four years old. The Children returned home again after about ten months in placement[,] and court supervision was terminated in November of 2012.

Although the Children remained home for the next several years, the relationship between [p]arents included multiple incidents of intimate partner violence. Mother was granted a final [p]rotection from [a]buse [o]rder on September 11, 2012[,] and was again granted [t]emporary [p]rotection from [a]buse [o]rders on June 30, 2017[,] and June 12, 2018. Each of these incidents document Father's ongoing abusive and threatening behavior in the presence of the Children.

Ultimately, in 2018[,] CYF received another referral, again

raising concerns of ongoing parental substance abuse and intimate partner violence. By March 20, 2019, CYF had substantiated these concerns and assumed emergency custody of the Children, placing them in the home of their maternal grandparents. On April 17, 2019, the [c]ourt adjudicated the Children dependent and ordered that they remain in placement. The [c]ourt found that the conditions requiring placement included Mother's need to engage in appropriate services to address intimate partner violence and her need to participate in the level of drug and alcohol treatment recommended to establish and maintain sobriety. Following a permanency review hearing on July 9, 2019, the Children's adult sister K.V. was approved for placement and CYF transferred the Children to her care where they have since remained.

On October 19, 2020, CYF filed petitions to terminate Mother's parental rights[,] and a hearing was held on August 13, 2021. During the termination hearing, the [c]ourt heard testimony from [five witnesses, including Mother, and seven exhibits were entered into the record].[1]

The evidence at the hearing established that during the time between the Children's adjudication and CYF's filing of the [petition to terminate parental rights], Mother failed to address the needs identified in the [c]ourt's orders.

Mother failed to attend and complete drug screens, attending only 6 out of 38 screens.[2] Mother did not provide CYF with any documentation to confirm that she completed any drug and alcohol treatment or was able to maintain sobriety. Mother also failed to provide any documentation of pursuing or completing mental health treatment despite diagnosis and

_____

[1] Mother was represented by counsel at this hearing. **See** N.T., 8/13/21, at 3.

[2] Mother, in her brief, uses a different time parameter than the lower court, which looked at the testing dates between dependency adjudication and the filing of the petition to terminate parental rights. **See** Orphans' Court Opinion, 12/9/21, 6 n.18. Instead, Mother's frame of reference starts in March 2019 and continues through the August 2021 termination hearing wherein "Mother was called for 50 screens and attended nine. Of those nine, eight were negative." Appellant's Brief, at 11 n. 6 (stating further that the positive screen was for Suboxone and Ativan, which were prescribed medications).

treatment recommendations and offers of in-home services. Additionally, despite concerns regarding Father's abusive behavior, Mother continued to reside with Father and failed to follow through with offered domestic violence services. Finally, Mother's visitation with the Children was infrequent and inconsistent, including an eleven[-]month period of no visitation at the time the termination petition was filed.[3]

Following the filing of the termination petition, Mother started to engage in required services. However, the evidence demonstrated her continued failure to resolve the issues identified by the [c]ourt at the time of adjudication. In December of 2020, CYF made another referral for domestic violence services. Mother finally began the program in January of 2021 and completed it in March. Despite engaging in these services, Mother continued to reside in the same household as Father. In January of 2021, Mother entered a medically assisted methadone treatment program through Progressive Medical Services [Progressive]. At that time, she admitted to snorting one to two bundles of heroin a day. While in the program, Mother tested positive for fentanyl on three separate occasions as well as various other controlled substances. Indeed, Mother admitted to a relapse during a court hearing on February 19, 2021. Ultimately, Mother was unsuccessfully discharged from the program on April 2, 2021[,] for missing multiple appointments and continuing to use illicit drugs. Mother continued to use heroin after her discharge from Progressive, admitting to police officers that she used heroin with Father on the day of his death.

The Children have made excellent progress in their placement with K.V. While K.V. is the Children's older sister, she has engaged with them in a positive parental manner and has

_____

3 Mother, based on her own testimony, refutes many of statements made in this paragraph. She asserts that "she consistently participated in mental health treatment for years and was willing to reinitiate treatment." Appellant's Brief, at 12 (citation to the record omitted). In addition, "Mother completed a program for intimate partner violence treatment through the Women's Center and Shelter on March 25, 2021." *Id*. (citation to the record omitted). Lastly, "Mother also testified regarding her significant involvement in [the C]hildren's lives. . . . [She] clarified that she has had almost daily contact with [the C]hildren[] and that they utilize phone and internet contact given that is what [the C]hildren prefer. *Id*. (citation to the record omitted).

created a family environment. M.L.A. has expressed feelings of safety and having her needs met. While M.W.A. has not verbalized those same feelings, he denies any concerns about his placement. The Children have also excelled in school, making honor roll and having high grades. Specifically, M.L.A. was previously in special education classes, but after working with her sister, she improved and was recently inducted into the National Honor Society. This progress suggests the Children have a positive and stable relationship with K.V. from which they benefit greatly.

Orphans' Court Opinion, 12/9/21, 2-9 (footnotes and citations to the record omitted).

Approximately one week after the termination of parental rights hearing, the court issued a written order terminating Mother's rights to the Children. Specifically, as referenced, *supra*, the court terminated her rights pursuant to two subsections of the Adoption Act: 23 Pa.C.S.A. § 2511(a)(2) and (8). In addition, the court found that its termination decision had the effect of meeting the needs and welfare of the Children. **See id**., at § 2511(b).

Thereafter, Mother filed a *pro se* petition for permission to appeal, which this Court, by order, treated as a timely notice of appeal. **See** Order, filed 9/24/21. Our order also remanded this matter to see whether Mother was entitled to court-appointed counsel. Upon remand, the lower court appointed counsel who then filed an amended concise statement of matters complained of on appeal. After that, the court issued an opinion in support of its findings. As such, this case is ripe for review.

On appeal, Mother seeks review of two questions:

1. Did the court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental

rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (8)?

2. Did the court abuse its discretion and/or err as a matter of law in deciding that CYF met its burden of proving by clear and convincing evidence that the involuntary termination of Mother's parental rights best met the developmental, physical, and emotional needs and welfare of the Children pursuant to 23 Pa.C.S.A. § 2511(b)?

*See* Appellant's Brief, at 1.

Our standard of review in cases that involve the involuntary termination

of parental rights is well-settled:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotation

marks omitted).

The lower court's analytical framework in termination of parental rights

actions stems from Section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. §§

2101-2938. Therein, those courts are obligated to conduct a bifurcated

analysis, first addressing the grounds for termination and then, thereafter,

ascertaining the needs and welfare of the child or children.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental

- 7 -

rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In defining what constitutes "clear and convincing evidence," this Court has framed such evidence as so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation and quotation marks omitted).

Here, CYF sought to terminate Mother's parental rights pursuant to Sections 2511(a)(2) and (a)(8). In accordance with the former section, a parent's rights may be terminated if:

[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2). Stated differently, "three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or

mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re A.R.M.F.*, 837 A.2d 1231, 1234 (Pa. Super. 2003) (internal quotation marks and citation omitted).

Under the latter section, termination of rights may occur if:

> [t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

*Id*., at § 2511(a)(8). Broken down into discrete factors, "the moving party must demonstrate that (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re A.R.M.F.*, 837 A.2d at 1234-35 (internal quotation marks and citation omitted). In petitions filed pursuant to subsection (a)(8), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

With these two subsections in mind, "[w]e emphasize that satisfaction of the requirements in only *one* subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." *In re Adoption of R.J.S.*, 901 A.2d 502, 516 n.3 (Pa. Super.

2006) (emphasis in original).

Mother claims that there was no clear necessity to terminate her parental rights. *See* Appellant's Brief, at 17. At the hearing, "Mother testified regarding her progress and her willingness to continue working on CYF's concerns. No evidence was presented that Mother would or could not remedy the concerns of the [c]ourt." *Id*. In addition, "Mother stated that she ha[d] not used illegal drugs since Father passed away," *id*., at 17-18, and had not used alcohol in two years. *See id*., at 18. Mother also identifies that she complied, at least to some degree, with her substance abuse provider and, too, completed intimate partner violence treatment. *See id*. Further, Mother participated in mental health treatment for approximately eleven years and "indicated a desire and willingness to continue her treatment." *Id*. (citation to the record omitted).[4]

Addressing subsection (a)(8) first, the court first indicated that it authorized removal of the Children from Mother (and Father) on March 20, 2019. As the Children have been in placement ever since, when CYF filed its termination petition in October 2020, more than twelve months had elapsed. *See* Orphans' Court Opinion, 12/9/21, at 11-12; *see also* Appellant's Brief,

---

[4] We note that, other than making these terse assertions contained in this paragraph, Mother does not provide any authority to demonstrate why, even assuming her statements to be true, the lower court's determinations warrant reversal.

at 18 ("Mother concedes that … [C]hildren have been out of her care for at least twelve months[.]").

Second, the court found a new placement for the Children was required because Mother needed to "address intimate partner violence and … participate in the level of drug and alcohol treatment recommended to establish and maintain sobriety." Orphans' Court Opinion, 12/9/21, at 12 (citation to the record omitted). In accordance with the court's directive, Mother was required to participate in drug and alcohol evaluations and "follow all recommendations, comply with random urine screens, participate in domestic violence services, and attend supervised visits with the Children." *Id*. However, Mother made minimal progress, meaning that, by and large, the conditions that led to the initial removal of the Children continued to exist. In addition:

> [t]he evidence revealed that Mother's engagement in the specified necessary services began *after* she became aware that the termination petition was filed. Mother repeatedly declined to participate in services to address intimate partner violence until December of 2020. . . . Mother did not enter drug and alcohol treatment until January 15, 2021[,] despite repeated referrals to various programs. At the time of admission, Mother was active in her use of heroin and continued to use during her time in treatment, admitting as much as a court hearing in February 2021, and testing positive at various screens. . . . Mother continued her use of heroin, even admitting to use on the day of Father's death in May 2021.

*Id*., at 13-14 (citations to the record omitted) (emphasis in original).

We conclude that the court's findings of fact, as to the first two (a)(8) factors, are supported by the record; the conditions that were the genesis for

the initial removal were clearly prevalent even after the termination petition was filed, e.g., the continued usage of drugs. Therefore, in this regard, the court has not abused its discretion.

At the termination hearing, at least until March 2021, CYF had no "indication that [Mother] ha[d] completed a drug and alcohol treatment program or been able to maintain sobriety[.]" N.T., 8/13/21, at 31-32 (admitting, however, that Mother entered into a "medical assisted" methadone program in January 2021, but beyond that "did not follow through with … recommendations for treatment"). In addition, Mother acknowledged having relapses, even acknowledging her having consumed heroin/Fentanyl immediately prior to Father's death. *See id*., at 8, 31. Mother also failed to attend and complete the vast majority of her drug screens.

As to the intimate partner violence concerns, Mother did not follow through with initial referrals that were made for group participation, but "when a referral was made in December of 2020, [M]other did end up engaging in domestic violence counseling then." *Id.*, at 34.[5] However, Mother was still living with Father at the time of his death, despite abuse concerns. *See id*. Eventually, although it obviously came after the point when the termination petition was filed, Mother completed a multi-course intimate partner violence program on March 25, 2021. *See id*., at 78.

_____

[5] December 2020 is two months after the petition's file date.

The court's opinion notes that, to the extent Mother was, in fact, remedying her situation in accordance with its directives, she was doing so *after the fact*. While we, like the lower court, acknowledge the progress she has made as to some of these issues, it was not an abuse of discretion for the court to disregard her actions that followed the filing of the termination petition. **See** 23 Pa.C.S.A. § 2511(b). Simply put, at the time the petition was filed, little, if any, demonstrable progress had been made on the areas identified by the court in the first instance as necessitating removal.

As to the (a)(2) basis for termination of parental rights, we briefly note the lower court's overview of events in this domain. To start, the court highlighted that the removal of the Children occurred three times: in 2009, 2011, and 2019. **See** Orphans' Court Opinion, 12/9/21, at 15. In each occurrence, the removal "arose in part from a combination of concerns related to Mother's substance abuse and intimate partner violence[.]" *Id*. Mother did not have any clear success in remedying the court's apprehensions. Specifically, when she did start some level of treatment, "Mother admitted to using one to two bundles of heroin a day [and further had] a relapse during her time in treatment." *Id*. (citations to the record omitted). Her drug treatment led to an unsuccessful discharge. **See id**. (citation to the record omitted). In total, then, at the hearing, Mother was really only able to claim a few months of sobriety, but was unable to provide any proof of ongoing engagement in treatment. **See id.**

As to concerns over intimate partner violence and its effect on the Children, the court emphasized Mother's decision to cohabitate, again, with Father, even though she had suffered from years of abuse from him, and the two had lived apart from one other for some period of time. *See id*., at 16. This re-cohabitation led to Mother stopping having visits with Children because "it was made clear to [M]other that [M]other cannot bring [F]ather to the visit[.]" N.T., 8/13/21, at 37. As to this issue, the court concluded that "Father's tragic death has ended [their] relationship, but that in no way establishes that Mother has addressed the conditions and causes underlying her choices about her relationship or the impact those choices have had on the Children." Orphans' Court Opinion, 12/9/21, at 17. Additionally, the court, to the extent Mother recognized that she needed continued treatment, "did not find the Majority of [her] testimony to be credible. Rather, her testimony was self-serving, often directly contradicting the credible testimony of the case workers regarding her behavior[.]" *Id*., at 17 n. 73.

Given the totality of the record evidencing Mother's treatment in conjunction with her drug, alcohol, and domestic violence problems, notwithstanding her recent efforts, we find no abuse of discretion in the first part of the court's determination, on either basis, that a termination of parental rights was warranted.

On the issue of whether involuntary termination best served the Children's developmental, physical, and emotional needs, such an analysis is

based on the totality of the circumstances and is focused, specifically, on the perspective of and impact on the Children. **See In re Coast**, 561 A.2d 762, 771 (Pa. Super. 1989); **In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*); 23 Pa.C.S.A. § 2511(b). "The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citation and quotation marks omitted).

As the bond of parental affection is of high importance, courts must ascertain whether a bond, in fact, exists between parent and child and then, if one does exist, the effect on the child if that bond were to be severed. **See In re K.Z.S.**, 946 A.2d 753, 760 (Pa. Super. 2008).

At the termination hearing, counsel for CYF stated that the Children have a bond with Mother. **See** N.T., 8/13/21, at 133. Therefore, the court, as it accepted this statement, was tasked with determining whether, if that bond were to be severed, it would lead to detrimental effects. **See In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011).

Mother indicates that the Children "do not want their Mother's rights terminated." Appellant's Brief, at 21. One of the Children, M.W.A., stated that he was concerned that, if parental rights were terminated, he would no longer be able to maintain contact with her. **See** N.T., 8/13/21, at 83. However, M.W.A. also stated that he "wants to be adopted by his sister but doesn't want to see … [M]other's rights terminated." Appellant's Brief, at 21.

As to M.L.A., although she did not oppose adoption by her sister, she conveyed that she did not "want ... [M]other's rights terminated" and wished for the court to dismiss the termination petition. *See* N.T., 8/13/21, at 139. More than anything else, M.L.A. wanted "to have contact with ... [M]other." *Id*., at 115.

Mother also outlines the way in which she is present in Children's lives. For example, Mother attends "family therapy with her children, every Saturday since February 2021." Appellant's Brief, at 23. While Mother acknowledges that her in-person visitation was inconsistent, she noted the other ways she communicates with Children, namely the daily use of texting and Facebook. *See* N.T., 8/13/21, at 119.

In contrast, the court unambiguously states that, while there is a bond between the Children and Mother, "the Children's bond with Mother is unhealthy, that the Children will not suffer extreme emotional consequences from termination of Mother's parental rights, and that instead[,] terminating Mother's right will free the Children from feeling responsible for Mother's emotional well-being." Orphans' Court Opinion, 12/9/21, at 19; *see also In re T.D.*, 949 A.2d 910, 920-21 (Pa. Super. 2008) (allowing for termination of parental rights even if there exists an emotional bond); *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003) (framing the court's analysis as considering whether parental termination "would destroy an existing, necessary and *beneficial* relationship[]") (emphasis added).

As outlined by the court:

> [b]oth Children have experienced significant trauma while in Mother's care. At their adjudicatory hearing in 2019, both testified to the violence they witnessed between their parents. M.W.A. witnessed an incident between them in September 2018 which resulted in Father being charged with strangulation, simple assault, and harassment. . . . M.L.A testified that there was frequent screaming and fighting in the home and that she sometimes locked herself in her room to avoid it.

Orphans' Court Opinion, 12/9/21, at 19-20. In fact, M.L.A had not expressed a desire to have visits with Mother without supervision. *See* N.T., 8/13/21, at 88. Further reflecting the unhealthy backdrop of their previous interactions and experiences, the Children "agreed to trauma therapy[.]" *Id*., at 80.

While testimony established that Mother's primary form of communication with the Children was through text messages, Mother did not visit the Children in person for fourteen months while Father was alive and concurrently not permitted to be present. *See id*., at 37 ("[T]here were no visits from Thanksgiving of 2019 until the … supervised visits started in February of 2021."). The record also evidenced that Mother's contact with M.W.A. imposed "a lot of pressure to make [a] decision [regarding adoption under the belief] that [M.W.A.] doesn't want to disappoint … [M]other." *Id.*, at 44.

As to the Children's current placement, the court found that they have made "substantial progress" in the care of their sister, leading to a conclusion that they "will not experience extreme emotional consequences as a result of [parental termination]." Orphans' Court Opinion, 12/9/21, at 21. Specifically,

- 17 -

"M.L.A. has expressed feelings of safety and having her needs met." *Id*., at 21-22 (citation to the record omitted). The court also remarked on the Children's present excellence in school, demonstrated by honor roll, high grades, and one of the Children's induction into the National Honor Society. *See id*., at 22 (citations to the record omitted).

While the court, to some degree, acknowledged that the Children care for and want to remain communicative with Mother, her involvement in their lives "has been inconsistent, unreliable, and ultimately fostered an unhealthy relationship." *Id*., at 23.

This Court has indicated that although a child's feelings are relevant to Section 2511(b) analysis, the conclusion that a beneficial bond exists because affection exists is "logically unsound." *In re T.B. v. L.R.M.*, 874 A.2d 34, 44 (Pa. Super. 2005). In this case, the court determined that, given the inherent risks Children faced through continued exposure to Mother, who, as of the hearing, was proceeding along an ambiguous path of rectifying her own problems, the bond between Children and Mother was not "worth saving" and "could be sacrificed without irreparable harm[.]" *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

The court also found that the Children's safety and stability merited emphasis, particularly noting the positive experiences they have had while residing in their older sister's home. *See In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015). The record established that the Children's

sister "has been a constant support[.]" N.T., 8/13/21, at 47. M.L.A., specifically, has expressed "safety, expressed her having her needs met, nobody hurts her [at her sister's residence]." *Id*. M.W.A., while being "less open" indicated that he denies having any concerns about the placement. *See id*. The record, too, amply supports the conclusion that the Children are presently doing well in school. *See id*.

A totality of the circumstances approach, which the court employed, leads to a conclusion that it did not abuse its discretion when it determined that the Children's needs and welfare were better met in their present placement and, therefore, in their best interests. *See* 23 Pa.C.S.A. § 2511(b). The court considered the relevant facts, involving an evaluation of testimony from all of the parties involved as well as items admitted into the record, and reached a decision predicated on Mother's heretofore lack of, *inter alia*, consistent mental health treatment, sobriety, and treatment after having been the victim of intimate partner violence.

Accordingly, we are unable to discern any error of law or abuse of discretion in the court's determination to terminate Mother's parental rights and are therefore constrained to affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/03/2022